FRUGÉ, Judge.
During the year 1962 the City of Alexandria entered into a contract with R. J. Jones & Sons, a commercial partnership, for the construction of a new city hall in Alexandria. The city hall was to be constructed with its front facing Third Street and in the rear by Main Street, on the south side by Murray Street, and on the north side by DeSoto Street.
Subsequent to this contract, defendant Jones entered into subcontracts with various parties for the performance of various phases of the construction. Among these contracts was one with Central Plumbing .and Heating for the construction of plumbing and drainage. Another subcontract was with the plaintiff, Elmer Rayner, doing ■business as Central Electric, for the electrical work, including the installation of certain electrical transformers.
Prior to November 1, 1963, these electrical transformers were installed in a special vault constructed for them at the corner ■of Main and DeSoto Streets. The roof of this electrical vault or room was the outside plaza floor which encircles three-quarters of the building. Prior to the installation of the permanent floor of the plaza and roof of the electrical room, Jones constructed a temporary waterproof roof, leaving in said roof openings to accommodate the drainage system to be installed by the defendant, Central Plumbing. In order to prevent water from entering the electrical room through the opening left to accommodate the drain, the defendant Jones sealed off this drain opening by mopping the area with hot tar, placing felt up to the pipe protruding through the hole, and then covering the hole with a can or bucket and sealing that with plastic cement.
■ On November 1, 1963, it rained. Sometime prior to this the bucket or can had been removed in an unexplained manner and the ran water was permitted to enter the drain hole. As a result of this the water fell on the transformers in the vault and three of the transformers shorted out. This resulted in their complete destruction and the filing of this suit.
After hearing all the witnesses and the evidence, the trial court concluded that the plaintiff had not carried the burden of proof and dismissed the suit.
Plaintiff has perfected this appeal, alleging the following errors:
1. In holding that plaintiff had the obligation of protecting his property after installation, under the terms of the building contract.
2. In holding that the doctrine of res ipsa loquitur was inapplicable.
3. In holding that the general contractor did not have the obligation of protecting the subcontractor’s property from damage.
4. In holding that there was no proof of negligence on the part of defendant Jones and defendant Central Plumbing.
The record contains the specifications for the building of the Alexandria City Hall and the liabilities and duties of the various subcontractors to the principal contractor, Jones. In the section of the specifications dealing with the electrical work to be done; it is stated:
“C. Protection of Equipment and Materials. The contractor shall continuously maintain adequate protection of all his work from damage and shall *356 protect the Owner’s property from injury arising in connection with his contract. He shall make good any such damage, injury, or loss. At completion of work the fixtures, materials and equipment shall be thoroughly cleaned and delivered in condition satisfactory to the Architect.”
Although the language of this section is not perfectly clear, a careful reading leads to the conclusion that the electrical contractor had a duty to protect his work until the total completion of his contract. The duty did not cease as each segment was completed but only when the total work of the electrical contractor on this particular building was completed and delivered. This was a contractual obligation assumed by the plaintiff that renders him liable if his equipment was destroyed.
Generally, in order to apply the doctrine of res ipsa loquitur, the instrumentality allegedly causing the accident must be at the time of the accident in the exclusive possession or control of the defendant. The record clearly shows that the plaintiff knew of the drainage hole in the ceiling of the transformer room and accepted as sufficient the measures taken by Jones with respect to waterproofing the drain. Since he had the contractual obligation to insure that his equipment would not be damaged and was fully aware of the consequence if water drained on the transformers, then the waterproofing of the drain and the duty to insure that the transformer room remained waterproof was not under the exclusive possession and control of Jones. Furthermore, res ipsa loquitur is inapplicable when it can be shown that “an inference that the accident was due to a cause other than defendant’s negligence could be drawn as reasonably as one that it was due to his negligence.” Gauthier v. Liberty Mutual Insurance Co., La.App., 3 Cir., 179 So.2d 437; Pilie v. National Food Stores, 245 La. 276, 158 So.2d 162, 165.
The fact that the can or bucket over the drain was not in place when the water came in is unquestionable, but who caused the removal of this can is what must be proven by the plaintiff if he is to carry the burden of proof.
Thus, determining that there is no basis to hold Jones liable for the damage to the transformers under the doctrine of res ipsa loquitur, it now becomes the issue whether Jones is liable for some negligence on the part of the subcontractor, Central Plumbing.
The plans and specifications for the building contract clearly disclose that the plumbing contractor had no obligation to the plaintiff with respect to sealing the drain or keeping it sealed and waterproofed during construction. The doctrine of res ipsa is clearly inapplicable to this defendant, and the only way to hold Central Plumbing liable would be predicated on the fact that Central Plumbing negligently removed the bucket and thereby occasioned the damage to the transformers.
The record reveals that the day before the accident two employees of Central Plumbing had worked on some of the drains. The testimony of both these men is to the effect that they did not work on the drains on the DeSoto Street side of the building, not having finished preparing the drains on the Murray Street side for the laying of the finished precast concrete blocks. No witnesses were brought forward placing these two men near the DeSoto Street side or by the drain over the transformer room. Both of these men denied working on the DeSoto Street side and denied removing the waterproofing can.
Singer, Jones’ superintendent, testified that after the accident he observed that some concrete had been chiseled out since the drain was sealed by him. He also observed that there were some concrete chippings on the transformer housing. Another witness testified as to the concrete chippings on the transformer housing, but no one other than Singer observed or testified as to the concrete being chiseled around the *357 drain. The trial court concluded that the chipping on the transformer housings came to rest when the “thimble” form was knocked out before the waterproofing of the drain.
The trial court concluded that although the employees of Central Plumbing could have been the ones who removed the waterproofing can, the plaintiff had not sustained the burden of proving this. We see no error in this finding.
Plaintiff had the contractual responsibility to see to it that his equipment was protected. At the time the drain was waterproofed by Jones, the plaintiff accepted and approved the manner by which it was done.
Since plaintiff had the obligation of protecting his equipment until the completion of the job, it was his responsibility of seeing that the can remained intact and in place to insure that no water came into the transformer room. This he failed to do, so he must now accept the responsibility and loss.
Having studied the record carefully, we find no difficulty in reaching the same conclusion as did the trial court. Plaintiff has signally failed to support his allegations of negligence by proof of probable weight adequate to award him judgment. For these reasons the judgment appealed from is affirmed at plaintiffs cost.
Affirmed.